

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 4, 2024

**BY ECF**
The Honorable Andrew L. Carter
United States District Judge
40 Foley Square
New York, New York 10007

  Re: *United States v. Ricardo Lopez*, 23 Cr. 441 (ALC)

Dear Judge Carter:

  The defendant in this case, Ricardo Lopez is scheduled to be sentenced on November 12, 2024, having pled guilty to conspiring to distribute 500 grams and more of cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B). For the reasons explained below, the Government submits that a sentence of at least 84 months' imprisonment is sufficient but not greater than necessary to serve the aims of sentencing.

## I. OFFENSE CONDUCT

  The defendant participated in a drug trafficking organization (the "DTO") operating in the Dominican Republic and United States. Lopez became involved in the DTO at least as early as August 2022, when the organization sent a "test load" of about 25 kilograms of cocaine from the Dominican Republic to the United States. (Presentence Investigation Report ("PSR") ¶ 9). Following the successful test shipment, the defendant traveled to the Dominican Republic, where he attended meetings with ranking members of the DTO and helped orchestrate a September 2022 shipment (the "September Shipment") of nearly 200 kilograms of cocaine to the United States. (PSR ¶ 15). Consistent with the drugs in the August 2022 test load, the drugs in the September Shipment were concealed in seaboard shipping containers. By the time the containers holding the September Shipment arrived at the Port of Philadelphia, Lopez was back in the United States, where he received word from another member of the DTO that the containers were "hot." (PSR ¶ 16). Lopez, in turn, conducted counter-surveillance, as he personally oversaw the transport of the containers within the northeastern United States. When law enforcement eventually stopped one of the containers on Long Island, Lopez captured the seizure on video and sent the footage to a co-conspirator. (PSR ¶ 18). Having received clear proof of law enforcement scrutiny, the DTO aborted a planned shipment of 50 kilograms of cocaine from the Dominican Republic to the United States, as well as a drug shipment bound for Europe. (PSR ¶ 19). While a member of the DTO, the defendant agreed to traffic nearly 260 kilograms of cocaine in just two months. (PSR ¶ 22).

## II. PROCEDURAL HISTORY AND GUIDELINES

On August 24, 2023, a Grand Jury returned an Indictment charging the defendant with one count of conspiring to distribute and possess with intent to distribute five kilograms and more of cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(A) (Count One), and one count of conspiring to import into the United States five kilograms and more of cocaine, in violation of Title 21, United States Code, Sections 963 and 960(b)(1)(B)(ii). (PSR ¶¶ 1-3). On August 29, 2023, the defendant was arrested. (PSR ¶ 21). He was presented the following day and released subject to bail conditions agreed upon by the parties.

On June 6, 2024, the defendant pled guilty, pursuant to a plea agreement with the Government, to the lesser-included offense of conspiring to distribute and possess with intent to distribute 500 grams and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B). (PSR ¶ 5). That lesser-included count of conviction carries a maximum term of imprisonment of 40 years; a mandatory minimum term of imprisonment of five years; a maximum term of supervised release of life; a mandatory minimum term of supervised release of four years; a maximum fine, pursuant to Title 18, United States Code, Section 3571, and Title 21, United States Code, Section 841(b)(1)(B), of the greatest of $5,000,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense; and a $100 mandatory special assessment. (*See* PSR ¶¶ 77, 80, 84.).

The plea agreement and the PSR agree on the calculation of the U.S. Sentencing Guidelines ("U.S.S.G" or "Guidelines"). Because the offense involved at least 150 kilograms of cocaine and less than 450 kilograms cocaine, the base offense level is 36. A two-point reduction is warranted because the defendant received no criminal history points under the Guidelines. After a three-level decrease for acceptance of responsibility, the defendant's total offense level is 31. Because the defendant has no criminal history points, he is in Criminal History Category I. The stipulated Guidelines range is 108 to 135 months' imprisonment, with a mandatory minimum term of 60 months. Probation recommends a below-Guidelines sentence of 84 months' imprisonment. (PSR ¶ 5; *see also id.* p. 22).

## III. DISCUSSION

The nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to promote respect for the law, to provide just punishment, and to afford adequate deterrence to criminal conduct, weigh in favor of a significant sentence of at least 84 months' imprisonment.

A substantial sentence is necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. The defendant worked with others to traffic hundreds of kilograms of cocaine. Five kilograms of cocaine is enough to trigger the ten-year mandatory minimum sentence under Title 21, United States Code, Section 841(b)(1)(A), and the defendant participated trafficking more than *fifty times* that quantity. Cocaine trafficking destroys lives, families, and communities. The product itself is dangerous and highly addictive. More than that, cocaine cartels such as the DTO have long been associated with gun violence, kidnappings,

and forced labor. Indeed, a financial dispute over the September Shipment in this case has been linked to the unsolved murder of a man and woman. (PSR ¶ 20).

Aspects of the defendant's history and characteristics, as well as the need for individual deterrence, likewise favor a sentence of at least 84 months' imprisonment. The Government does not discount the harsh circumstances of Lopez's upbringing. In spite of significant challenges—poverty, physical abuse, family separation (PSR ¶¶ 48-50)—Lopez became a member of the Dominican Republic National Police, assigned to the drug enforcement unit. (PSR ¶ 52). He was shot several times by members of a violent narco-gang and managed to obtain an engineering degree while recovering from his injury. (PSR ¶ 68). Owing to "problems in the Dominican Republic," including threats to his safety, the defendant eventually immigrated to the United States. (PSR ¶ 52-53). Notwithstanding first-hand experience with the violence of narco-trafficking and an advanced degree that opened the door to a bright future, Lopez opted to join a violent DTO responsible for distributing addictive narcotics in his home country and the United States. That choice is equal parts remarkable and disgraceful.



A substantial sentence is also necessary to afford adequate deterrence to criminal conduct for society generally. The defendant and others who engage in the trafficking of dangerous substances must understand that their actions negatively impact our communities, and that those who perpetuate the drug problem in this country will be punished appropriately.

The defendant's requested sentence of 60 months would be insufficient to serve the purposes of sentencing discussed above. Sixty months is the minimum sentence imposed on anyone who is convicted of trafficking 500 grams and more of cocaine in violation of Title 21, United States Code, Section 841(b)(1)(B). For several reasons, the defendant deserves more than the bare minimum. First, the actual quantity of cocaine involved in this case was orders of magnitude greater than the 500 grams that triggers the 60-year sentence. Indeed, the September Shipment alone involved 184 kilograms of cocaine. Second, the defendant did not minimally participate in this conspiracy on an isolated occasion. Instead, he participated in the DTO both in the Dominican Republic, where he helped orchestrate the September Shipment, and in the United States, where he sought to assure the undetected arrival and distribution of the DTO's drugs. Finally, the defendant's law enforcement background exacerbates his conduct. A trusted law enforcement officer who was no doubt privy to sensitive narcotics intelligence, the defendant should be held to account for betraying his colleagues in the Dominican Republic National Police and putting their lives at risk by facilitating the drug activity of the DTO.

## IV. CONCLUSION

The Government respectfully requests that the Court impose a sentence of at least 84 months' imprisonment.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____
Marguerite B. Colson
Assistant United States Attorney
(212) 637-2587

cc:    Elena Fast, Esq. (by ECF)ne